**Decided January 19, 1983**

COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS
COMMONWEALTH TRIAL COURT

MICHAEL A. WHITE,                )        CIVIL ACTION NO. 82-07
                                 )
            Plaintiff,           )
                                 )
        vs.                      )        MEMORANDUM OPINION
                                 )
REPUBLIC OF NAURU,               )
                                 )
            Defendant.           )
_____)

This is a case about a basketball team coach who had a ticket to fly from Nauru to Guam on August 31, 1981 but was bounced off of the flight by the airline, Air Nauru.

The plaintiff, an attorney, was the coach of the Commonwealth's basketball team which played in the Oceania Games held in Fiji in August of 1981. Prior to leaving the Commonwealth for the games, the plaintiff made arrangements for the team to fly to and from the games. Originally, the ticket of the plaintiff showed that he was to return on September 3rd from Fiji. However, before departing the Commonwealth, the plaintiff learned that Air Nauru had

instituted a new schedule and an earlier flight was to leave. Fiji on August 30, 1981.[1] This earlier flight fit into the team's game plan better and allowed them to leave soon after their last contest on Fiji and arrive back in the Commonwealth several days earlier. The plaintiff went to a local travel agent and received verbal confirmation that he along with the rest of the team, was confirmed on the earlier flight.

On the way to the games, the plaintiff transited Guam and while there he spoke with two agents of Air Nauru at the airline's counter in the airport. Once again, his return flight on the 30th was confirmed.

From Guam the plaintiff went to Nauru where a short layover apparently occurred. During this time the plaintiff spoke with another employee of Air Nauru, a Mr. Capelle, and he likewise confirmed the plaintiff on the flight leaving Nauru for Guam on August 31, 1981.

After arrival in Fiji, the plaintiff contacted the airline office of Air Nauru in Suva, Fiji, and was, once again, verbally told that his return flight was confirmed.

---

[1] The flight, as scheduled, was to leave Fiji on August 30, 1981, arrive Nauru around midnight and leave Nauru for Guam in the early morning hours of August 31, 1981.

On August 30, 1981, the plaintiff, along with the rest of the basketball team left Fiji on Air Nauru as planned. Their baggage was checked through to Guam.[2]

The plaintiff and the others arrived on Nauru around midnight or the early morning hours of August 31st. A plane change was required and the plaintiff and the team deplaned to check in for the other plane to Guam. It is here that the plaintiff's fast break for Guam dribbled to a halt.

After taking the plaintiff's ticket, the same Mr. Capelle advised the plaintiff that he did not have a reservation. While the plaintiff was standing on the sidelines, he observed several people without reservations being accepted for boarding by Air Nauru. These "substitutes" appeared to be Government of Nauru officials.[3]

After being denied a seat, the plaintiff, along with the members of the team, demanded that their luggage be retrieved from the plane and after obtaining it, they were

---

[2] From Guam the plaintiff was scheduled to return to Saipan on another airline, Air Micronesia.

[3] The defendant has made no claim that it was unable to accommodate the plaintiff because of Government requisition of space.

345

taken by a bus to a hotel, arriving there somewhere around 1:30 to 2:00 a.m. Apparently, the hotel staff had called a time out, as there were no desk clerks or maids available and consequently, it was not until around 4:00 or 5:00 o'clock a.m. that the plaintiff received a room.

Later the same day, Air Nauru flew the plaintiff and the rest of the basketball team to Guam but the delay caused the plaintiff to miss his flight to Saipan. He paid $14 more to another airline, arriving back about 12 hours later than anticipated.

The plaintiff seeks the return of the $14, $760 for the loss of estimated law income for the day of August 31st, and $2,000 for the inconvenience, humiliation, etc.

Several preliminary matters must be addressed before the tip-off of whether the plaintiff has scored is revealed.

The defendant asserts that the plaintiff is in the wrong court, making no distinction between the front one or the back one. Three points are raised.

First, it is asserted that service was improperly made upon it as a foreign state. 28 USC §1608(a)(3) provides that service of the complaint and summons and a notice of the suit can be made by sending the documents to the ministry of foreign affairs by the Clerk of the Court. This was

done, albeit not by return receipt or in the Nauruan language as indicated in §1608(a)(3). However, defendant does not object to this deficiency but asserts that service should have been made under §1608(a)(4) which specifies that the documents are to be sent through the Secretary of State of the United States.

Section 1608 provides four alternatives for service. Subsection 4 is not the only way service can be perfected. The plaintiff chose the third alternative. The deficiencies noted above are deemed not critical for service here because, the defendant obviously received the documents and filed a general appearance. Additionally, the defendant has neither argued nor shown any prejudice for the failure to comply exactly with §1608. International Schools Service v Government of Iran, (1981, D.C. NJ) 505 F.Supp. 178.

Next, the defendant asserts that if any court has jurisdiction over the defendant, venue rests in the United States District Court for the District of Columbia, Washington, D.C., citing 28 USC §1391(f)(4).

Subsection (4) of this section is prefaced by the wording: "(f) :A Civil action against a foreign state . . . may be brought ___"

The word "may" is discretionary, not mandatory. Additionally, the provisions of Chapter 97 of Title 28, U S C, §§1602 to 1611, make it abundantly clear that "state courts" are recognized forums for suits against foreign states. Indeed, 28 USC §1605 states that a foreign state shall not be immune from the jurisdiction of courts of the states in those cases enumerated in the section. In short, the defendant has not provided any authority to demonstrate that this court is not the proper court.

Lastly, the defendant argues that it has sovereign immunity from the suit. This assertion is quickly and easily dunked. There is no doubt that the litigation before the court concerns a commercial activity of the defendant. The uncontradicted testimony and evidence is that the Republic of Nauru is the sole owner and operator of Air Nauru. The airline is in the business of flying fare paying passengers on scheduled routes. It operates a ticket agency on Saipan and holds itself out to the people of the Commonwealth as any other commercial airline. There is no sovereign immunity in such a case. 28 USC §1605(a)(2).[4]

---

4

It is academic to discuss whether, under the existing provisions of the Covenant to Establish a Commonwealth of the Northern Mariana Islands in Political Union with the United States, the Commonwealth is a part of the United States or a territory of same for the purposes of 28 USC, §1602, et seq. In view of the clear nature of the defendant's commercial activity, either 28 USC, §1605(a)(2) or the general rule denying sovereign immunity to governmental commercial ventures bars the defense of severeign immunity. 45 AmJur 2d, International Law, §50. See also the rational of the "Tate Letter", referred to in Sugarman v. Aeromexico, Inc., 626 F.2d 270 at 273 et seq (3 Cir 1980)

Turning now to the merits, the court finds that the defendant improperly denied plaintiff space on the flight in the early morning hours of August 31, 1981. The plaintiff was verbally told no less than four different times that his flight was confirmed. Three of these occasions were by agents and employees of the defendant. The defendant can take no solace in the wording in plaintiff's ticket.[5] Paragraph 11 of the Conditions of Contract in the ticket states that no agent of the carrier involved has authority to alter, modify, or waive any provision of the contract. The defendant argues that this means the various Air Nauru agents could not bind the airline to confirm plaintiff's change in reservations. The defendant fouls out on that assertion as Paragraph 11 has nothing to do with the ministerial task of making, confirming or re-confirming reservations.

It is found that the defendant did confirm reservations for the plaintiff on the August 31st flight and that the defendant wilfully failed to recognize those reservations. Consequently, plaintiff is entitled to damages and therein lies the more difficult issue to be resolved.

---

[5] Plaintiff's ticket was issued on Air Micronesia (Continental) ticket stock. However, the conditions of contract listed on the inside of the ticket are the same for Air Nauru flights. If the passenger uses various airlines, the conditions of contract apply to the respective carriers involved. See Defendant's Exhibit A.

Defendant's Exhibits C and D concern, in part, the limitation of liability which the airline wishes to enforce. Article 18 of Defendant's Exhibit C, specifically disclaims any liability for delay except for negligence or wilful fault of the carrier (Paragraph 1). The court, having previously found that the defendant is wilfully at fault, need not pause any longer on this portion of the contract. Paragraph 11 of Article 18 states that the carrier is not liable for consequential or special damage. It is clear that any claim of damages must be limited by requiring the plaintiff to provide proof of same with reasonable certainty.[6]

Be that as it may, the court concludes that the damages to be paid by the defendant are set by the contract between the plaintiff and defendant.

---

[6] The reason for such a limitation is clear. To allow claims for all damages resulting from delays in transportation would subject any airline to all sorts of speculative claims. Whereas, one could perhaps recognize the plaintiff's additional $14 expense to fly from Guam to Saipan, there is no doubt that the airline could not foresee or anticipate plaintiff's claim for a lost day of work in his law office with unknown clients and speculative income producing results. The court follows the general rule requring reasonable certainty in proving damages. 22 AmJur 2d, Damages, §22 at p. 40.

Defendant's Exhibit B is the passenger rules tariff for Air Nauru. The ticket that the plaintiff purchased is subject to this document (See Paragraph 3 of Conditions of Contract in Defendant's Exhibit A). The flight the plaintiff was booked on terminated in Guam and is included in the definition found in Part A(1). There is no proof that any of the exceptions apply. It is also clear that the defendant did not provide an alternate flight within four hours. Therefore, the amount of compensation set forth in Part A(2) is set at the $75 minimum and $400 maximum.[7]

Plaintiff's ticket shows that the flight from Fiji (Suva) to Guam was $367.60. The portion from Nauru to Guam only is not indicated. However, the court will give judicial notice of the fact that Nauru is approximately 1,500 statute miles from Fiji and 1,800 miles from Guam and pro-rate the fare of $367.60. Accordingly, the fare from Nauru to Guam is computed to be $200.52.[8] Part A(2) allows 200% of this amount which slightly exceeds the $400 maximum.

---

[7] This appears to be consistent with the Civil Aeronautics Board Regulations. 14 CFR §250.5.

[8] There may be a question as to whether Guam was actually the plaintiff's next stopover and whether defendant's liability ends there. In view of the maximum liability of $400, this question need not be answered.

It is therefore concluded that defendant's liability to the plaintiff is fixed at $400. Since the amount was readily ascertainable on August 31, 1981 and the defendant did not tender payment on that date as required in Part A(4) of Defendant's Exhibit B, interest on the $400 shall be computed from August 31, 1981 at 9% per annum. Plaintiff shall also be entitled to his costs of suit.

This Memorandum Opinion shall constitute the Findings of Fact and Conclusions of Law of the Court pursuant to Com. R. Civ. P. 52.

Dated at Saipan, CM, this <u>19th</u> day of January, 1983.

_____
Robert A. Hefner, Chief Judge